UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff/Respondent, | ) ) | No. 5:15-CR-79-DCR-HAI-2 |
| v. | ) ) | RECOMMENDED DISPOSITION |
| TANIESHA C. STRICKLAND, | ) ) ) | |
| Defendant/Movant. | ) ) | |

*** *** *** ***

Defendant Taniesha C. Strickland has filed a motion under 28 U.S.C. § 2255, alleging 38 grounds for relief. D.E. 114. The government responded, and filed an affidavit from Strickland's trial attorney along with a series of letters. D.E. 125. Strickland did not file a reply within the time allotted to do so. Thus, the motion is ripe for review.

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

The Court recognizes that Strickland is proceeding *pro se*, without the assistance of an attorney (although her motion was prepared by a prisoner providing legal aid). The Court

construes *pro se* motions more leniently than other motions. *Castro v. United States*, 540 U.S. 375, 381-83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985). A document filed *pro se* is to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Many of Strickland's claims raise issues of ineffective assistance of counsel. To successfully assert an ineffective-assistance-of-counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688.

However, a reviewing court may not second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Strickland*, 466 U.S. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

To show prejudice in the guilty-plea context, a movant "'must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial.'" *Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)), *cert. denied sub nom. Hodges v. Carpenter*, 135 S. Ct. 1545 (2015), *reh'g denied*, 135 S. Ct. 2345 (2015).

To show prejudice in the sentencing context, a movant must establish that his "sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

Strickland's numerous grounds are often repetitive, overlapping, and contain multiple theories. They have been sorted and analyzed on the basis of subject matter instead of in the order that they are raised by Strickland.

## I. Background

As described in Strickland's plea agreement, in July 2015, Lexington police officers conducted controlled purchases of small amounts of heroin from Strickland and her codefendant Antonio Rosebur. D.E. 95 at 2. On July 29, officers received and executed a state search warrant on an apartment that was occupied by Strickland and Rosebur. Officers conducting the search found heroin, pain pills, and cocaine, some of which was in Strickland's wallet and shoe.

*Id*. Strickland told the officers she had only been in Lexington a couple of days, but she admitted occasionally selling heroin "down the street." *Id*. at 3.

On September 10, 2015, Strickland was indicted for one count of conspiracy to distribute 100 grams or more of heroin, one count of possessing with intent to distribute 100 grams or more of heroin, and one count of possessing with intent to distribute cocaine, crack, oxycodone, and hydrocodone. D.E. 1. Antonio Rosebur was also charged in all three counts, plus a fourth count of being a felon in possession of a firearm, based on a pistol that was found in the apartment bedroom. *Id*. On September 21, after being arrested, Strickland appeared in Court with retained counsel Benjamin Hicks (D.E. 8), and was released on conditions (D.E. 9).

On November 22, 2015, the government moved to revoke Strickland's release (D.E. 32), and the Court issued an arrest warrant (D.E. 35). Strickland's probation officer alleged that Strickland had submitted a urine sample that tested positive for marijuana. D.E. 51. She was arrested in Michigan and again released on bond. D.E. 36. Shortly thereafter, Strickland moved for rearraignment (D.E. 39). Her rearraignment was set for December 23, 2015 (D.E. 41), but she failed to appear, and the Court issued an arrest warrant (D.E. 43). Antonio Rosebur did appear at that hearing, and pleaded guilty. *See* D.E. 54 at 2. In January, Mr. Hicks moved to withdraw as Strickland's counsel. D.E. 52. Strickland was again arrested in Michigan for failure to appear at the December 23 hearing, but this time she was not released. D.E. 54 at 2. Judge Reeves granted Mr. Hicks's motion to withdraw and ordered Strickland to appear on the additional bond violation charge that she violated her terms of release by failing to appear at the December 23 hearing. *Id*. at 3.

The Court then appointed Thomas C. Lyons to represent Strickland (D.E. 55), and her release was revoked on February 26, 2016 (D.E. 59). On March 9, 2016, Strickland again moved

to plead guilty subject to an agreement with the government.  D.E. 62.  She appeared at her April 8, 2016 rearraignment hearing, but she did not enter a plea.  D.E. 72.  According to Mr. Lyons, on that date "Strickland would not sign the plea agreement and appeared upset."  D.E. 125-1 at 6.  The Court took a two-hour break, but, after further discussion, Strickland was "more emotional and was having difficulty deciding how to proceed."  *Id.*

Several days later, Strickland moved for rearraignment a third time (D.E. 74), and pleaded guilty on April 15 to a lesser-included offense of Count One, *i.e.*, conspiracy to distribute heroin with no quantity specified (D.E. 77; D.E. 124 (transcript)).

In her plea agreement, Strickland admitted that, prior to the search of the apartment, she and Rosebur sold "small amounts of heroin" during "controlled purchases."  D.E. 95 at 2.  She admitted that she was in the apartment when the search was conducted and that officers found large quantities of narcotics, including "a small bag" of heroin in her wallet and 44 grams of cocaine in a "woman's shoe" that Strickland admitted belonged to her.  *Id.*  Also, according to the factual summary, Strickland "claimed that she had only been in Lexington for a couple of days" and she admitted she would "occasionally" take small quantities of heroin "down the street to sell to someone."  *Id.* at 3.  She admitted that her relevant conduct included 13.4 grams of cocaine, 23.2 grams of crack, 1.2 grams of hydrocodone, 1.18 grams of oxycodone, and 20-40 grams of heroin.  *Id* at 3-4.  Pursuant to the plea agreement, the government recommended a 2-level increase in her base offense level because a firearm was possessed.  *Id.* at 4.  The agreement also recognized that the government was opposed to a credit for acceptance of responsibility on account of the violations of her bond conditions.  *Id.*

The plea agreement also contained a waiver provision at paragraph 8:  "The Defendant waives the right to appeal the guilty plea and conviction.  Except for claims of ineffective

assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence." *Id*. at 5.

On August 15, 2016, Strickland was sentenced to 57 months of imprisonment, followed by three years of supervised release. D.E. 98. She did not appeal. The current motion under 28 U.S.C. § 2255 was timely placed in the prison mail on August 14, 2017 (although it erroneously states it was 2016). D.E. 114 at 54.

Strickland argues in **Ground One** that her plea was not knowing and voluntary on account of her "mental health deficits." *Id*. at 4. She argues in **Ground Four** that her plea was not voluntary because her attorney pressured her into it. *Id*. at 8. She also argues in **Grounds 37 and 38** that she was actually innocent of the heroin conspiracy. *Id*. at 49-52. She also raises numerous other allegations of ineffective assistance of trial counsel ("IAC"). The non-IAC claims will be considered first.

## II.  Validity of the Plea Agreement

Because the existence of a valid plea agreement undermines many of Strickland's claims, the validity of her plea is a pivotal issue that warrants the Court's full attention. If done knowingly and voluntarily, a criminal defendant may, by the terms of the plea agreement, waive her right to file a direct appeal and her right to collaterally attack her conviction and sentence under § 2255. *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001). "[A] defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Griffin*, 854 F.3d 911, 914 (6th Cir. 2017).

However, a petitioner may challenge the validity of such a waiver on the basis that the plea "was not knowing or voluntary, or was the product of ineffective assistance of counsel." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). Strickland raises both of these challenges.

Several of Strickland's grounds for relief concern her mental competency. If, at the time of her rearraignment, she was mentally incompetent to stand trial, her plea would be invalid. To enter a valid plea, a defendant must possess "the sufficient present ability to consult his lawyer with a reasonable degree of rational understanding, as well as having a rational and factual understanding of the proceedings against him." *United States v. Calvin*, 20 F. App'x 452, 453 (6th Cir. 2001). But not every manifestation of mental illness demonstrates incompetency to stand trial. For example, "Neither low intelligence, mental deficiency, nor the fact that a defendant has been treated with anti-psychotic drugs can automatically be equated with incompetence." *Hastings v. Yukins*, 194 F. Supp. 2d 659, 671-72 (E.D. Mich. 2002) (citing *Burket v. Angelone,* 208 F.3d 172, 192 (4th Cir. 2000); *Miles v. Dorsey,* 61 F.3d 1459, 1474 (10th Cir. 1995)).

Strickland alleges in **Ground One** that her plea was not knowing or voluntary. D.E. 114 at 4. She also appears to argue throughout her motion that her plea was the product of ineffective assistance of counsel. Among other allegations, Strickland claims her counsel failed to appreciate her psychological handicaps. *Id.* She argues that her "mental health deficits" affected her ability to make "a knowledgeable plea." *Id.* She says she "did not understand what a plea agreement is," and that counsel did not explain the agreement and its related risks "in a culturally sensitive" or "primarily English language" format. *Id.* She states in **Ground Two** that she suffered from "lead intoxication and PTSD in elementary school," and that she had "attention deficit disorder with hyperactivity, behavioral manifestations, and dyslexia (written and spoken word deficits)." *Id.* at 5. She argues that counsel failed to investigate her competency issues prior to her plea. *Id.* In **Ground Sixteen**, she alleges that counsel should have requested what the Court construes to be a competency determination. *Id.* at 24. In

**Ground Eighteen** she alleges that her repeatedly displayed "emotional disturbances" and lack of comprehension should have triggered competency proceedings, and that her signature on the plea agreement was void because counsel did not read the plea agreement to her or discuss it with her. *Id*. at 26. Part of **Ground Twenty** argues that counsel should have raised defenses of insanity, lack of intent, and extreme emotional disturbance. *Id*. at 28.

In **Ground Four**, Strickland repeats her allegation that counsel failed to explain the agreement and its associated risks and argues that she was "improperly pressured" into accepting the plea. D.E. 114 at 8. She argues that counsel wanted her to plead guilty "for the sake of his relationship with the 'federal people,'" and avers that counsel had reason to initiate competency proceedings. *Id*. **Ground Fourteen** alleges that counsel coerced Strickland to enter the guilty plea against her wishes, even after she "burst into emotional distress" during a private meeting in which she stated "she did not want or agree with the plea offer." *Id*. at 21. She claims she was "pressured into a guilty plea" and "not offered information on consequences of withdrawing a plea." *Id*. She claims counsel "never discussed . . . the risk and benefit of the plea offer in the beginning of his representation." *Id*. Federal Rule of Criminal Procedure 11 governs plea colloquies. The Rule is meant to ensure that the district court is satisfied that a guilty plea is made knowingly, voluntarily, and intelligently. *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005). Rule 11 requires the Court to verify "that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Id*. at 378-79. When the District Court "has scrupulously followed the required procedure" during a plea colloquy, "the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1990) (quoting *Baker v. United States*, 781 F.2d

85, 90 (6th Cir. 1986)).  Accordingly, in cases where the court has followed Rule 11's procedural requirements, "absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, *a defendant's plea agreement consists of the terms revealed in open court*."  *Id.*

Regarding these extraordinary circumstances, the Supreme Court has instructed that "misunderstanding, duress, or misrepresentation by others" may render invalid a plea colloquy that otherwise appears properly conducted.  *Blackledge v. Allison*, 431 U.S. 63, 75 (1977).  However, a defendant's "[s]olemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal."  *Id.* at 74; *see also Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that a conclusory statement is insufficient to raise the issue of ineffective assistance of counsel).

Strickland does not argue that the Court failed to comply with Rule 11 during her rearraignment.  Instead, she states she did not "understand what a plea agreement is."  D.E. 114 at 4.  She alleges that counsel did not explain her agreement or its risks or benefits "in a culturally sensitive nor primarily English language format" that she could understand.  *Id.*  She also appears to argue that she was incompetent to enter a plea.  But nothing in the record suggests she had difficulty understanding the agreement, and her sworn statements in Court belie her present arguments.

Strickland explained at her rearraignment that she had an eleventh-grade education and was working on her GED at a community college in Detroit.  D.E. 124 at 4.  She told District Judge Reeves, under oath, that she had never been "treated or hospitalized for any type of mental health condition."  *Id.* at 6.  She stated she had never "been diagnosed as having any type of a

mental health condition," including anxiety or depression.  *Id.*  Mr. Lyons told Judge Reeves that he had no problem communicating with Strickland, and that "[s]he's perfectly competent as best I can tell."  *Id.* at 8.  Strickland told Judge Reeves that she had the opportunity to read the plea agreement and had discussed it with Mr. Lyons.  *Id.* at 10.  She told Judge Reeves she understood the terms and conditions of her plea agreement.  *Id.*  She also agreed that no one had made any threats or "in any way forced" her to plead guilty.  *Id.* at 14.  Strickland explained her involvement selling heroin in her own words.  *Id.* at 25.  At the end of the hearing, Judge Reeves asked Strickland whether she had failed to understand any of his questions, and she answered "no."  *Id.* at 29.

Each of these "[s]olemn declarations in open court carr[ies] a strong presumption of verity."  *Blackledge*, 431 U.S. at 74.  Further, Strickland's sworn statements at her rearraignment are corroborated by Mr. Lyons's recollections in his affidavit.  *See* D.E. 135-1.

Strickland's contradictory allegations in her § 2255 motion, unsupported by any facts in the record, are insufficient to overcome the general rule that she is bound to her sworn statements in open court.  *See Elzy*, 205 F.3d at 886.  They are also insufficient to raise the issue of ineffective assistance of counsel in regard to the voluntariness of her plea.  *See Ramos*, 170 F.3d at 563.  Although she now argues that her "mental health deficits" prevented her from making "a knowledgeable plea" (D.E. 114 at 4), she informed the Court under oath that she had never "been diagnosed as having any type of a mental health condition" (D.E. 124 at 6).  And, even assuming that Strickland suffers or has suffered from lead intoxication, PTSD, attention deficit disorder, and dyslexia, she does not explain how these issues rendered her incompetent to plead or stand trial.  Strickland also told the Court that she understood the plea agreement, and her attorney also opined at the rearraignment that she seemed perfectly competent.  *Id.* at 8-10.

Accordingly, Strickland's claims related to a supposed lack of competency (**Grounds One, Two, Sixteen, and parts of Eighteen and Twenty**) have no merit. The same goes for the other claims in which she argues her plea was not knowing and voluntary because counsel coerced her to plead guilty or else hid the terms of the agreement (**Grounds Four, Fourteen and the remainder of Eighteen**). Her plea was voluntary, and, because she was competent, she has no factual basis on which to build a competency-related IAC claim.

Also, because Strickland's plea was voluntary, all non-IAC claims are waived. As stated in her plea, "Except for claims of ineffective assistance of counsel, the Defendant . . . waives the right to attack collaterally the guilty plea, conviction, and sentence." D.E. 95 at 5. This waiver bars any non-IAC claims asserted in a § 2255 motion. In **Ground Five**, Strickland argues that the government withheld the search warrant and its application materials. D.E. 114 at 12. In **Ground Six**, she argues that her interrogation following the execution of the search warrant was improperly conducted. *Id*. at 13. In **Grounds 37 and 38**, she argues that she was actually innocent of the crime or else that the evidence against her was insufficient. *Id*. at 49-52. Because these are not IAC claims, they were waived as part of Strickland's valid plea agreement. Each of these **Grounds (Five, Six, 37, and 38)** should be dismissed as validly waived.

Even if Strickland had not explicitly waived her insufficient evidence claims in paragraph eight of the plea agreement, they would be foreclosed by operation of her guilty plea. Entry of a voluntary and intelligent plea of guilty precludes a post-judgment challenge to the sufficiency of the evidence. "[A] counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case." *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975). Any "attack on the sufficiency of the evidence that might have been produced at trial [is] clearly waived by [a] defendant's guilty plea." *United*

*States v. Manni*, 810 F.2d 80, 84 (6th Cir. 1987). "[A] guilty plea admits all averments of fact in the indictment, cures all non-jurisdictional defects, waives all defenses, and relieves the prosecution from the duty of proving any facts." *United States v. Patton*, 173 F.3d 857 (6th Cir. 1999) (table) (citing *Tollett v. Henderson*, 411 U.S. 258, 260-67 (1973)). Even absent a plea of guilty, a challenge to the sufficiency of the evidence is generally "not cognizable under § 2255." *Buchanan v. United States*, 191 F.3d 451 (6th Cir. 1999). The Sixth Circuit has "repeatedly held that the sufficiency of the evidence to support a conviction may not be collaterally reviewed on a Section 2255 proceeding." *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) (en banc). This principle provides an alternative basis for denying relief on Strickland's non-IAC challenges based on insufficient evidence (**Grounds 37 and 38**).

### III.  Lack of Factual Support

Many of Strickland's claims suffer from a failure to provide any factual support. Rule 2 of the Rules Governing Section 2255 Proceedings requires the petitioner to specify all the available grounds for relief and "state the facts supporting each ground." Mere notice pleading in habeas petitions "is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error." *Blackledge v. Allison*, 431 U.S. 63, 76 n.7 (1977) (citation omitted). A motion in which the "petitioner's claims are stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof [is] legally insufficient to sustain a review." *Higgins v. United States*, No. 10-1316-JDT-EGB, 2015 WL 4601161, at *58 (W.D. Tenn. July 29, 2015) (quoting *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974)).

Importantly, conclusory allegations are insufficient to state claims of ineffective assistance of counsel. *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000). This rule

requires more than vague and conclusory statements in a § 2255 motion. But, such statements are all that Strickland offers in support of many of her claims.

This lack of factual development plagues, for example, **Ground 25**, which faults counsel for failure to move for a change of venue. D.E. 114 at 33. Strickland's only factual assertion regarding this claim is that she asked counsel to move for a change of venue. *Id*. **Ground 34** also mentions a request for a change in venue. *Id*. at 44. Yet for each ground, she provides no explanation of why a change of venue would have been appropriate or how such a change would have benefitted her. The same applies to Strickland's assertion in **Ground 35** that counsel should have filed motions related to venue and collateral estoppel. D.E. 114 at 45. She provides no factual basis for the Court to assess the merits of any such motion or whether she was prejudiced by counsel's failure to pursue one.

Other claims suffer the same fatal flaw. In another portion of **Ground 35**, Strickland says counsel failed to raise defenses of alibi, entrapment, duress, and evidence pointing to another. *Id*. She does not explain what her alibi was, how she was entrapped, who subjected her to duress, or toward whom else the evidence pointed. **Ground Ten** also raises entrapment, and merely argues that counsel should have investigated whether she was entrapped. *Id*. at 17. Part of **Ground Twenty** similarly faults counsel for failing to raise a defense of duress. *Id*. at 28. That Ground also alleges a failure to raise an unspecified "indictment defense." *Id*. **Ground 24** argues that counsel should have moved to dismiss the indictment and to sever the codefendant. *Id*. at 32. But Strickland points to no defect in the indictment and provides no rationale for severance other than her general protestation of innocence. *Id*. Accordingly, **Grounds Ten and 35**, the duress aspect of **Ground Twenty**, and the indictment and severance aspects of **Ground 24** are insufficiently stated under *Elzy*, even when liberally construed.

13

### IV.  Evidentiary Issues and Alleged Failures to Investigate

Strickland claims that her attorney failed her in many ways prior to the entry of her plea. But, again, these claims are presented in mere conclusory fashion without sufficient factual support.

For example, Strickland alleges in several grounds that counsel either failed to investigate certain issues or failed to share discovery materials with her.  **Ground Three** faults counsel for failing to investigate certain issues and "withhold[ing] material facts" from Strickland prior to her guilty plea.  D.E. 114 at 7.  She alleges counsel failed to, for example, investigate fingerprint evidence concerning the weapon, proof of her tenancy in the searched apartment, and an alleged video recording of a controlled drug purchase.  *Id*.  The fingerprint issue also appears in **Ground 21**.  *Id*. at 29.  **Grounds Seven and Eight** allege that counsel failed to provide Strickland with discovery materials, despite being asked "4 or 5 times" to do so.  *Id*. at 14-15.  **Ground Nine**, similarly to **Ground Three**, alleges that counsel failed to investigate the two alleged controlled drug buys from Strickland, including a failure to inspect or provide to her the video recordings of the alleged drug sales.  *Id*. at 16.

**Ground Eight** also alleges that counsel failed to interview her or "her potential witnesses," despite her "numerous" requests.  *Id*. at 15.  Strickland states that counsel told her he would interview any pro-defense witnesses if the case proceeded to trial, and that he was not authorized to interview the prosecution's witnesses.  *Id*.  Strickland does not assert that this legal advice was inaccurate and unreasonable, only that she wanted the interviews conducted.  *Id*.  **Ground Seventeen** likewise faults counsel for failing to contact both "collaborating" and "prosecutorial" witnesses.  *Id*. at 25.  Here the claims (liberally construed) are that Strickland would not have pled guilty had these uninvestigated witnesses been sufficiently discovered,

implying that they would have testified in her favor at a trial.  When a defendant claims that his attorney failed to call a witness at trial, she must "[a]t the very least . . . submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial and able to give testimony favorable to [the] defense." *Talley v. United States,* No. 1:00-cv-74, 2006 WL 3422997, at *10 (E.D. Tenn. Nov. 27, 2006); *see also United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991) ("Under whatever framework, however, evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.").  Having failed to present such affidavits, the Court cannot make any real assessment of how any testimony from the unidentified defense witnesses would have affected the outcome of Strickland's case.

Strickland argues, in **Ground Nineteen**, that counsel should have pursued a mistaken identity defense.  D.E. 114 at 27.  Strickland alleges she was not the "female tenant" of the apartment, and that she was not the female who was videotaped paying the rent.  *Id*.  She raises the same issue in **Ground 21**, and additionally argues that she had only arrived in Lexington "about 27 hours prior" to the search.  *Id*. at 29.  **Ground Three, Ground 23 and Ground 26** raise this issue as well.  *Id*. at 7, 31, 34.  In **Ground 26**, Strickland "denies ever going to the rental office," and alleges her attorneys failed to investigate this issue.  *Id*. at 34.

However, the questions of how long she had been in Lexington and whether she had paid the rent for the apartment are a red herrings.  It is not relevant whether Strickland was the woman who was seen paying the rent or how long she had been in Kentucky.  There is no question that she was present when the apartment was searched, and that several items belonging to her were

found there, including drugs.  She admitted all this in the plea agreement (D.E. 95 at 2) and does not contest these facts.  Accordingly, **Grounds Nineteen, 21, 23, 26,** and the mistaken-identity aspects of **Grounds Three and 21** afford Strickland no relief.

In **Ground 22**, Strickland argues that counsel should have attacked the conspiracy aspect of the charge because she told counsel "there was no agreement with codefendant to commit any illegal act" and "no overt act was committed" by her.  D.E. 114 at 30.  Again, Strickland validly pleaded guilty to the drug conspiracy and confessed under oath the facts that supported the charge.  D.E. 95.  The Court has no basis for finding prejudice on this issue.

In addition to the "mistaken identity" issue previously discussed, **Ground 23** further alleges that counsel "failed to correct prosecutors' use of false statements," "fictitious evidence," and "hearsay evidence."  D.E. 114 at 31.  Of course, Strickland never went to trial, so no such alleged evidence was ever actually "used" against her in a manner that could warrant an objection.  In any event, **Ground 23** contains no factual development regarding the alleged improper evidence, and her plea solidified her factual guilt.

Strickland's various claims of pre-plea deficiencies by her counsel are described in rote fashion with no specific factual bases.  For the reasons stated above, these various assertions do not afford her any relief.

### V.  IAC:  Failure to Move for Suppression of Evidence

Strickland argues that counsel should have moved to suppress certain evidence.  A § 2255 movant can raise a Fourth Amendment claim indirectly as a claim of ineffective assistance of counsel.  *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986)).

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also

prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman*, 477 U.S. at 375.

In **Ground Thirteen**, Strickland alleges that counsel "failed to request and challenge the veracity of the search warrant application." D.E. 114 at 20. She says she asked counsel to investigate several issues related to the warrant, and she believes he should have challenged "the application and process of the search's veracity." *Id*. As explained in the plea agreement, the search warrant was a state warrant obtained by the Lexington Police Department. D.E. 95 at 2. The materials related to the warrant are not in the record of this case. Strickland provides no factual support for this claim. The Court cannot find a meritorious Fourth Amendment claim when Strickland points to no alleged defect in the warrant materials. Thus, this claim fails under both the factual-support rule of *Blackledge* and *Elzy* and the meritorious-claim rule of *Kimmelman*.

In **Ground 24**, Strickland faults counsel for failing to move for "suppression of evidence which bears no concrete evidence of ownership to movant." D.E. 114 at 32. Here, she does not explain what pieces of evidence she believes were subject to suppression or what the legal basis for suppression would be. This claim should be dismissed because she fails to allege any facts that point to a real constitutional error. *Blackledge v. Allison*, 431 U.S. 63, 76 n.7 (1977). The same goes for her claim, also in **Ground 24**, that counsel should have moved to suppress "witness identification." D.E. 114 at 32. Strickland does not specify any witness identification that she believes is subject to suppression, or why it could have been suppressed. So, first, both of these claims lack adequate factual support. Second, Strickland's guilty plea removes them from consideration. Third, she has not shown a likelihood of success for either motion. **Ground**

17

**24** (along with the part of **Ground 21** that faults counsel for failing to investigate the "application of search warrant") should be denied.

### VI.  IAC:  Other Alleged Misbehavior by Counsel

Strickland makes other claims of ineffective assistance that are not related to evidentiary issues.  Here, she fails to sufficiently establish any prejudice and the claims therefore afford her no relief.

In **Ground Twelve**, Strickland alleges that another detainee told her that Mr. Lyons said Strickland was "guilty, an emotional wreck, and completely gone crazy."  D.E. 114 at 19.  She argues that this breached counsel's duty of confidentiality.  *Id.*  Even assuming that the accusation is true and that counsel may have violated ethical rules, this does not automatically translate to ineffective assistance.  *See United States v. Nickerson*, 556 F.3d 1014, 1018-19 (9th Cir. 2009); *United States v. Ailemen*, 43 F. App'x 77, 83 (9th Cir. 2002) ("[E]ven if the attorneys violated rules of professional conduct, their conduct did not preclude effective representation of their client.").  Strickland must still show prejudice.  But she makes no attempt to show how the outcome of her case would have been different absent this misbehavior.  **Ground Twelve** fails to state a claim under *Strickland*.

Similarly, **Ground Fifteen** claims that counsel was "inattentive" and "negligent" toward Strickland.  D.E. 114 at 22.  She alleges he told her to "shut up" in court and "sharply scolded" her for telling Judge Reeves she failed to understand something he said.  *Id.*  She claims counsel improperly told her to take the plea without sufficient discussion because the prosecution had a video recording of her selling drugs and she needed to "kiss the prosecutor's ass" and take the deal.  *Id.*  Again, an ethical violation does not automatically translate to ineffective assistance.

Strickland does not make a plausible case that the outcome would have been different had counsel been more polite.

**Ground 29** asserts that counsel was "concerned about his personal embarrassment" after Strickland wept in Court and told Judge Reeves she failed to understand one of his statements. D.E. 114 at 38. **Ground 30** likewise argues that counsel's behavior was motivated by his concern about his reputation. *Id.* at 39. Strickland appears to say that she was frightened of counsel and was unwilling to speak in court without his express permission. *Id.* at 38-39. But her statements at her rearraignment indicate that, at least at that time, she had no issues to bring to the Court's attention:

| THE COURT: | Is there anything that I asked you, and you really weren't sure what I was asking, but you went ahead and answered anyway either out of courtesy or for some other reason? |
|---|---|
| STRICKLAND: | No. |
| THE COURT: | No. So you've understood my questions? |
| STRICKLAND: | Yes. |
| THE COURT: | Do you have any questions for me at this time? |
| STRICKLAND: | No. |

D.E. 124 at 29. Her claim that she did not feel free to speak in court is contradicted by the record, and Strickland makes no showing that the outcome would have been different had counsel handled her more gently. **Grounds 29 and 30** should be denied.

**Ground 28** relies on the same facts as **Grounds Fifteen, 29, and 30**, but faults counsel for failing to move for a dissatisfaction hearing. D.E. 114 at 36. According to this ground, after counsel told Strickland to "shut up" and "yelled at [her] for embarrassing him," she asked him "to cease representation" on account of his "inattentiveness, neglect, and aberrant behavior." *Id.*

19

But Strickland failed to assert, and thus preserve, any dissatisfaction-with-counsel issue. "[A] defendant wishing to substitute counsel must 'bring any serious dissatisfaction with counsel to the attention of the district court.'" *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (quoting *United States v. Iles*, 906 F.2d 1122, 1131-32 (6th Cir. 1990)). To garner relief on such a claim, a § 2255 movant must have "actually expressed dissatisfaction" before the court. *Benitez*, 521 F.3d at 633. Strickland makes no claim that the Court was aware of her dissatisfaction issue. Assuming the claim survives her plea agreement, it was unpreserved, and she makes no showing of prejudice.

Also in **Ground 28**, Strickland claims that her "guilt was admitted by counsel without [her] consent." D.E. 114 at 36. This allegation is refuted by Strickland's statements at her rearraignment. She told Judge Reeves that no one had made any threats or "in any way forced" her to plead guilty. D.E. 124 at 14. And she explained her involvement selling heroin in her own words. *Id*. at 25.

**Ground 27** faults counsel for failing to explain the elements of the crime, as part of counsel's alleged general lack of communication with Strickland. D.E. 114 at 35. Strickland told Judge Reeves under oath at her rearraignment that she had reviewed the indictment, discussed it with her attorney, and understood the charges and the terms of the plea agreement. D.E. 124 at 9-10. This claim is contradicted by her sworn statements in court. The plea agreement that Strickland signed contains the elements of the offense and the facts underlying those elements. There is no basis for finding prejudice on this claim. **Ground 27** should also be denied.

**Ground Eleven** alleges, among other claims, that counsel failed to explain the plea agreement's appeal-rights waiver. D.E. 114 at 18. Again, the rearraignment transcript forecloses

any possible finding of prejudice. Judge Reeves explained the waiver in detail, and Strickland stated that she understood it. D.E. 124 at 19-20. She also told him that she felt she understood the "terms and conditions" of the plea agreement. *Id*. at 10. These terms and conditions would of course include the waiver provision. **Ground Eleven**'s allegation is contradicted by the record and affords her no relief.

**Ground 34** argues that counsel should have moved for Judge Reeves's recusal on the basis that the judge "had a personal-familial issue of drug overdose from heroin in his son." D.E. 114 at 44. Strickland says she "made five or more" requests to counsel to seek Judge Reeves's disqualification. *Id*. However, Strickland does not show prejudice because she does not explain how the outcome would have been different (in plea acceptance or sentencing) under another judge.

**Ground 36** is a catch-all ground that repeats many of the IAC allegations previously discussed in this Recommended Disposition, and adds a few others. D.E. 114 at 46-48. However, **Ground 36** merely lists three pages of potential claims, without providing any factual development or showing of prejudice. Merely listing claims does not provide a basis for post-conviction relief.

## VII. IAC: Post-Plea Issues

Some of Strickland's claims relate to occurrences following her guilty plea.

At the end of **Ground Eleven**, Strickland states that "counsel failed to advise movant [of the] time limit for filing notice of appeal, advise movant of [her rights] concerning appeal," and failed to inform her of her "right to appointed counsel on appeal." D.E. 114 at 18. Strickland does not claim that she asked counsel to file a notice of appeal.

**Grounds 31 and 32** cover similar territory.  D.E. 114 at 41-42.  In **Ground 31**, Strickland claims that counsel failed to advise her of the right to appointed counsel on appeal and to discuss the possible merits of an appeal.  *Id*. at 41.  In **Ground 32**, she alleges that counsel failed to advise her of the "potential risk of filing an appeal."  *Id*. at 42.

Paragraph 8 of the plea agreement states:  "The Defendant waives the right to appeal the guilty plea and conviction.  Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence."  D.E. 95 at 5.  As Judge Reeves explained at the rearraignment, in the first part of Paragraph 8,

> you waive the right to appeal the guilty plea and conviction, but you're not giving up the right to appeal your sentence.  And essentially what that means is that after the sentence has been imposed, the judgment has been entered, you wouldn't be— would not be able to take a direct appeal to challenge the guilty plea or the conviction, but you could challenge any aspect or any part of the sentence that's imposed in your case.

D.E. 124 at 20.

Regarding **Grounds Eleven, 31, and 32**, Strickland cannot show she was prejudiced by any failure of counsel to inform her of appeal mechanics.  The record contains the "Court's Advice of Right to Appeal," which Strickland and her attorney signed.  D.E. 96.  Strickland acknowledged in the document that it had been read to her "in open court" and a copy was furnished to her.  *Id*.  The document alerts Strickland to the 14-day time limit, her right to appeal *in forma pauperis*, and her right to appointed counsel.  *Id*.  Thus, even if counsel did not explain her appeal rights, the Court did.  The government has also filed a letter from Mr. Lyons to Strickland, dated August 17, 2016, which explains the 14-day deadline.  D.E. 125-5.  This letter is consistent with Mr. Lyons's statements that he did advise her of her appeal rights.  D.E. 125-1 at 17.

Because Strickland *was* informed of these rights, she cannot show prejudice. Again, Strickland does not claim that she asked counsel to file an appeal. Nor does she state that she would have appealed had she understood these mechanics, or what issues she might have raised. Further, the Court of Appeals would have dismissed any appeal of the plea or conviction based on Paragraph 8. Additionally, Strickland provides no argument that the Court of Appeals would have had a legal basis for correcting her sentence. Because she gives the Court no reason to find that her sentence was erroneous, there is no basis for finding prejudice related to a failure to appeal the sentence. Stated differently, the record indicates that counsel did consult with Strickland about a possible appeal. For example, the letter to Strickland states, "As we discussed, you have the right to appeal . . . [but] you indicated that you do not wish to take an appeal." D.E. 125-5. Even if counsel had not consulted with Strickland about a possible appeal, Strickland provides the Court with no basis for finding that this lack of consultation was objectively unreasonable. *Johnson v. United States*, 364 F. App'x 972, 975–76 (6th Cir. 2010).

In **Ground 33**, Strickland argues that she "had a right to counsel or new counsel during [the] period after sentencing" when an appeal could be filed, and that her attorney had a "conflict of interest" during this period. D.E. 114 at 43. She argues that counsel refused to give her "vital information in post-trial proceedings." *Id*. This ground fails for lack of factual support and any showing of prejudice. Strickland does not explain what "vital information" she was lacking or how things could have gone differently in her favor post-sentencing. She does not explain how he "refused to advocate [her] causes" or "worked against [her] interest." *Id*. Absent any clarifying specificity or argument concerning prejudice, **Ground 33** provides no basis for relief.

### VIII.  Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that Strickland's 28 U.S.C. § 2255 motion (D.E. 114) be **DENIED.**

This case also does not warrant an evidentiary hearing.   An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"   28 U.S.C. § 2255(b); *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).   "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).   "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*.   In this case, even taking as true Strickland's factual allegations that are not contradicted by the record, they would not entitle her to relief.   The record therefore "conclusively show[s]" she is not entitled to relief. *Arredondo*, 178 F.3d at 782.

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See also* Rule 11 of the Rules Governing Section 2255 proceedings.   This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).   The Court has considered the issuance of a Certificate of Appealability as to each of Strickland's many claims.   No reasonable jurist would

find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

When claims are dismissed on procedural grounds, a Certificate may only issue if the movant can show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Strickland's non-IAC claims were waived as part of her valid plea agreement. That these claims are procedurally barred is not debatable.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 22nd day of January, 2018.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge